UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO: 8:15-cr-337-T-36TBM

JOSHUA ANTHONY RIVERA
_____/

## O R D E R

This matter comes before the Court on Defendant's Motion to Suppress Fruits of Illegal Search of Hotel Room (Doc. 43). The Government responded in opposition to the motion (Doc. 50). An evidentiary hearing was held on March 2, 2016, at which three Hillsborough County Sheriff's Officers testified: Ronald Corr, Janak Amin, and Bryan Spiewak. The Court, having considered the motion and being fully advised in the premises, will deny Defendant's Motion to Suppress Fruits of Illegal Search of Hotel Room.

*I.*     *BACKGROUND AND RELEVANT FACTS*

On June 7, 2015, an unknown male suspect, believed to be Hispanic, brandished a short-barreled shotgun at employees of the Express Mart grocery store in Hillsborough County and demanded money. The unknown suspect had his face covered but he was seen wearing dark sweat pants with a white stripe down the side and white tennis shoes with black leather edging.

On June 8, 2015, an unknown male suspect, believed to be Hispanic, brandished a short-barreled shotgun and demanded money from employees at the Tierra Mexicana grocery store. The unknown suspect had his face covered but he was seen wearing dark colored sweat pants with a white stripe down the side.

On June 14, 2015, an unknown male suspect, believed to be Hispanic, brandished a short-barreled shotgun and demanded money from employees at a Circle K convenience store in

Manatee County. The suspect was tracked by a K-9 officer to the area where a dark colored Ford Expedition had been seen by an off-duty law enforcement officer ("LEO") shortly before the robbery.

On June 16, 2015, an unknown male suspect, believed to be Hispanic, brandished a short-barreled shotgun and demanded money from employees at a Circle K convenience store in Hillsborough County. Again, the suspect's face was covered but he was seen wearing white tennis shoes with black leather edging. Officers observed surveillance video of the Circle K from approximately an hour before the robbery. They observed a Hispanic male, wearing the same clothing and shoes as the robber, enter the store and look around. That male, later identified as Joshua Rivera, a Hispanic male, was seen leaving the store in a dark colored Ford Expedition.

On June 17, 2015, an unknown male suspect, believed to be Hispanic, brandished a firearm and demanded money from employees of a Citgo convenience store in Pasco County. The suspect's face was covered but he was seen wearing white tennis shoes with black leather edging.

Later on June 17, 2015, Hillsborough County Sheriff's Officers ("HCSO") discovered that a dark colored Ford Expedition with Florida license plate number 240QRV was in the area of the Express Mart during the time of the robbery on June 7, 2015. It was also discovered that the vehicle was registered to Leila Michelle Green, a black female, of Orlando, Florida.

HCSO deputies located the Ford Expedition at a Knights Inn Motel on U.S. 301 in Hillsborough County and approximately 5-7 officers went to the hotel to conduct surveillance on the vehicle. While conducting surveillance on the vehicle at the hotel, Detective Ronald Corr observed a Hispanic male, later identified as Joshua Rivera, and a black female, later identified as Leila Michelle Green, arguing outside of room 314. He heard them screaming and cursing at each other, then the female went into the room and slammed the door, and the male banged on the door

and eventually kicked it in. Corr radioed the other officers at the motel to inform them of the incident and the decision was made to go inside the room to check on the safety and welfare of the female.

The officers lined up outside of hotel room 314, where the door was partially open and the latch was broken from being kicked in. One of the deputies knocked on the door and a male voice said something to the effect of "I'm not coming out. You have guns." At that time the officers pushed through the door of the hotel room. One officer, Sgt. Amin went straight to the back of the hotel room to conduct a protective sweep of the bathroom – looking for any other people that may be in the room. Detective Corr followed Amin to cover his back. At the same time, Deputy Spiewack secured Ms. Green to make sure she was okay. He noted that she had a bruise on her cheek and had been crying. Also at the same time, one or two officers made contact with and secured Rivera. The officers were beginning their interviews of Green and Rivera when Amin, having turned out of the bathroom, noticed a white sneaker with black trim on the floor of the hotel room. Amin recognized this shoe from the pictures of the robbery subject and yelled to everyone in the room to "get out" so the room could be secured and a warrant obtained. The room was emptied immediately and the officers continued their interviews of Green and Rivera outside while awaiting the search warrant. Detective Corr, who was about halfway inside the room, noted that he saw the shoe as well after Amin called out.

The officers obtained search warrants for the hotel room and Green's Expedition. The warrant application was supported by an affidavit that, *inter alia*, mentioned the shoe. The crux of the Defendant's argument here is that, without the shoe, the warrants would not have been issued. Accordingly, it must be determined whether the discovery of the shoe was the result of a violation of Defendant's Fourth Amendment rights.

## II.     DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people . . . against unreasonable searches and seizures." U.S. Const. Amend. IV.  To deter lawless police conduct, evidence seized in violation of the Fourth Amendment must be excluded. *See Terry v. Ohio*, 392 U.S. 1, 12 (1968). A warrantless search is *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks and citation omitted).

The Government concedes that Rivera was staying in the hotel room with Green and, therefore, had an expectation of privacy in that room. *United States v. Bushay,* 859 F. Supp. 2d 1335, 1363 (N.D. Ga. 2012). The Defendant concedes that, in light of the domestic dispute, the officers had the right to conduct a safety check on Ms. Green and to enter the room under exigent circumstances. The Defendant argues, however, that the officers should only have gone far enough into the hotel room to see that Ms. Green was "fine" and, therefore, should not have been far enough into the room to see the shoe.

One exception to the warrant requirement is based upon a finding of exigent circumstances. *United States v. Santa,* 236 F.3d 662 (11th Cir. 2000).

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. "'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'". . . Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Here, at least one officer observed an altercation between Rivera and Green that resulted in Rivera kicking in a hotel room door to get to Green. Therefore, as the Defendant concedes, the officers' entry into the hotel room was justified by exigent circumstances.

Once inside the hotel room, the agents and officers were permitted to conduct a protective sweep to determine if there was anyone inside the room who may pose a threat to law enforcement or whether anyone else was injured and required assistance. *United States v. Rivera-Pabon*, No. 1:09-CR-0395-JOF-JFK, 2010 WL 5349483, 12 (N.D. Ga. Aug. 9, 2010). *See also United States v. Holloway,* 290 F.3d 1331, 1340 (11th Cir. 2002) (because the officers entering the residence "had reasonable cause to believe they were entering a volatile and potentially dangerous situation . . ., officer safety" allowed for a detention of any individuals found therein and for a "limited search of the premises"); *United States v. Caraballo,* 595 F.3d 1214, 1224 (11th Cir. 2010) (officer lawfully on board ship based on exigent circumstances was authorized to conduct protective sweep where he "'possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene'") (quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990)); *United States v. Martins,* 413 F.3d 139, 150 (1st Cir. 2005) ("We hold . . . that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry.").

> Any protective sweep "may extend only to a cursory inspection of those spaces where a person may be found" and may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335-36, 110 S. Ct. at 1099. Furthermore, evidence discovered in plain view during the protective sweep is properly admissible at trial. *Holloway*, 290 F.3d at 1340 (because officer's warrantless presence in the residence was justified by the exigent circumstances, he was authorized to seize evidence in plain view); *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) ("The agents were free to seize any evidence they discovered in plain view within the proper scope of the protective sweep.").

*Rivera-Pabon*, 2010 WL 5349483 at 12.

Here, the officers conducted a lawful protective sweep of the hotel room to make sure that Green and Rivera were the only people in the room. Detective Amin went straight back to the bathroom, checked for people, and turned around – the whole sweep lasted only a minute or two. As he turned around he saw the shoe, in plain sight. Amin was lawfully in the hotel room, by the bathroom, when he saw the shoe. It was reasonable for the officers to conduct a protective sweep of the entire hotel room – which was fairly small. The shoe was visible not only from Amin's position in the back of the room, but also from Corr's position in the middle of the room - just past the first bed. The officers did not conduct a search of the hotel room at this time. Instead, they obtained a search warrant for the hotel room and the Ford Expedition.

Defendant's argument that because Green and Rivera were close to the front door, in front of the first bed, the officers should not have gone any further into the room than that, is unavailing. The officers had the right to conduct a protective sweep of the entire room to ensure that nobody else was in there that may pose a danger to them or need assistance. Because the shoe was lawfully observed, it was not improper to use that information in the affidavit to obtain the search warrants. Therefore, the search warrants were lawfully obtained.[1]  Accordingly, it is ORDERED that Defendant's Motion to Suppress Fruits of Illegal Search of Hotel Room (Doc. 43) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on March 4, 2016.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[1] The Government also argues that Defendant does not have standing to challenge the search of the Ford Expedition. Having determined that the search warrants were lawfully obtained, the Court need not address this issue.

6